John W. Howard  (SBN 80200)
Scott J. Street (SBN 258962)
Michelle D. Volk (SBN 217151)
Peter C. Shelling (SBN 351159)
**JW HOWARD │ ATTORNEYS, LTD**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel: 619-234-2842; Fax 619-234-1716
Email:  Johnh@jwhowardattorneys.com
          Sstreet@jwhowardattorneys.com
          Michelle@jwhowardattorneys.com
          Pshelling@jwhowardattorneys.com

Ryan T. Giannetti (MD Bar No. 1912170132)
Laura Stell (NC Bar No. 59840)
James Rogers (AZ Bar No. 027287)
**AMERICA FIRST LEGAL FOUNDATION**
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (202) 964-3721
Email:  Ryan.Giannetti@aflegal.org
          Laura.Stell@aflegal.org
          James.Rogers@aflegal.org

Attorneys for Plaintiff, John Loeffler

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JOHN LOEFFLER,

       Plaintiff

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION, a New
York Corporation, and ARVIND
KRISHNA, an individual,

       Defendants.

Case No.:  2:25-cv-05765-CBM-PD

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA  92101

Plaintiff John Loeffler ("Mr. Loeffler") alleges as follows:

## **NATURE OF THE ACTION**

1.     This lawsuit is about Defendants' discrimination against Mr. Loeffler based on his race, sex, and age.

2.     Mr. Loeffler is a 64-year-old white male.

3.     He worked for International Business Machines Corporation ("IBM") for 9 years, frequently receiving positive reviews for his successes.

4.     IBM terminated Mr. Loeffler, despite his record as a top-performing Technical Seller, because he is an older white male.

5.     Despite Mr. Loeffler's longstanding high performance, his newly assigned manager, Eric Castillo ("Mr. Castillo"), placed Mr. Loeffler on an intentionally unachievable Performance Improvement Plan ("PIP").

6.     Mr. Castillo pretextually designed the PIP to remove Mr. Loeffler from IBM because he is an older white male.

7.     Defendants implemented an illegal hiring, promotion, or retention policy based on race in violation of Mr. Loeffler's equal rights under 42 U.S.C. § 1981.

8.     Defendant IBM further violated Mr. Loeffler's civil rights under Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000e-2 *et seq*. and the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900 *et seq*., by intentionally discriminating against him because of his race and sex.

9.     Defendant IBM further violated Mr. Loeffler's civil rights by violating the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and FEHA, Government Code § 12940(a), discriminating against him because of his age.

10.     IBM has a documented history of discrimination. In 2020, the EEOC announced a finding of age discrimination by IBM. The EEOC finding states:

> The Commission's investigation reveals that Respondent conducted Resource Actions analyzed by the EEOC between

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

2013 and 2018 that had an adverse impact on employees in the protected age group (PAG). The investigation uncovered top-down messaging from Respondent's highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for **Early Professional Hires**. Analysis shows it was primarily older workers (85.85%) in the total potential pool of those considered for layoff.[1]

11.    IBM's actions against Mr. Loeffler demonstrate a continuation of the same top-down, discriminatory scheme; only now, IBM has expanded its crosshairs to include additional disfavored demographics, such as white and male.

## PARTIES, JURISDICTION, AND VENUE

12.    Mr. Loeffler is a California citizen with his primary residence in Tustin, California.

13.    Defendant IBM maintains its headquarters in Armonk, New York, and is also incorporated in New York. It is qualified to do business in the state of California under file number 0159726.

14.    IBM employed Mr. Loeffler at all times relevant to this complaint. His official title was Principal Cloud Platform Technical Specialist ("Technical Seller").

15.    At all times relevant to this complaint, Mr. Loeffler worked remotely from his residence in Tustin, California.

16.    Arvind Krishna ("Mr. Krishna") is the Chief Executive Officer ("CEO") of IBM. Mr. Loeffler is informed and believes that Mr. Krishna is responsible for intentionally implementing IBM's illegal and discriminatory policy that favored groups based on their race, sex, and age.

17.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the federal claims arise under the laws of the United States.

18.    Further, this Court has supplemental jurisdiction over the state claims

---

[1] **Exhibit 1**, IBM Corporation's U.S. EEOC Determination, pgs. 1 – 2. (September 3, 2020) (emphasis added).

FIRST AMENDED COMPLAINT

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

under 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

19.    The state law claims share a common nucleus of operative facts with the federal claims, as they both arise from Defendants' discriminatory and unlawful policies, as well as from Defendants' discriminatory conduct.

20.    Mr. Loeffler seeks compensatory and punitive damages under 42 U.S.C. §§ 1981, 1985(3), 1988, 42 U.S.C. § 2000e *et seq.*, and California Government Code § 12900 *et seq*.

21.    Venue is proper in this District under 42 U.S.C § 2000e-5(f)(3), and 28 U.S.C. § 1391(b)(2).

## **FACTUAL ALLEGATIONS**

22.    Mr. Loeffler began his employment with IBM in 2014. He worked as a Technical Seller for public sector clients.

23.    Throughout his employment, Mr. Loeffler consistently received positive performance evaluations and was selected for high-priority projects, reflecting IBM's trust in him to lead and advance its most critical initiatives.

24.    For example, Mr. Loeffler's 2021 performance review states, "John, your excellent work ethic and your support for your teammates and others speaks for itself. I particularly would like to highlight the great work you continue to do."

25.    In early 2022, Mr. Loeffler was assigned to Project Comet, a government contract focused on re-platforming multiple states' public benefits administration systems.

26.    Specifically, Mr. Loeffler was solely responsible for the architecture and design of the new systems for Project Comet's Cloud Platform team. Mr. Loeffler dedicated hundreds of hours to Project Comet and laid most of the groundwork for the revenues that came through in 2023.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

FIRST AMENDED COMPLAINT

27.    In his 2022 performance review, delivered in January 2023, Mr. Loeffler was lauded for his immense contributions. The review stated:

> John is an exceptional team member in all aspects of his role. John's outstanding work ethic and positive attitude have made him a valuable asset to the team and his contributions have not gone unnoticed. John's exceptional attention to detail and ability to prioritize tasks has led to several successful projects, including a significant contribution in helping the team come up to speed on many of our new technologies. John's exceptional communication skills have also been a valuable asset in collaborating with cross-functional teams. John's outstanding work and commitment to excellence make him a key team member, and we look forward to seeing his continued success in the coming year.

28.    Project Comet generated approximately $30 million for IBM, including about $10 million for Mr. Loeffler's business unit.

29.    Also in 2022, Mr. Loeffler was directed to perform work outside the norm for an architect and was assured that his time outside his typical job duties would not be held against him.

30.    At IBM, Technical Sellers are generally paired with a Seller. The Seller typically obtains the leads and moves the ball towards closure, while the Technical Seller provides the technical expertise to help close the deal. Standard practice generally places the Seller and Technical Seller with identical sales territories and quotas.

31.    Notably, Mr. Loeffler spent most of 2022 without an active Seller counterpart, seriously disadvantaging Mr. Loeffler's ability to achieve optimal sales results.

32.    During this same year, Mr. Loeffler was asked to mentor and train two substantially younger, non-white individuals as Technical Sellers.

33.    The substantially younger, non-white trainees lacked the requisite experience or technical knowledge for their positions.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

34. IBM labeled the individuals "early professional hires."

35. On information and belief, "early professional hires" is a standard euphemism within IBM for younger employees.

36. Mr. Loeffler complied with this request and mentored the two individuals to the best of his ability and fostered a productive working relationship with them both.

37. Despite the challenges Mr. Loeffler faced in 2022, in January of 2023, Mr. Loeffler received a de facto promotion to an "above market" SME role. This greatly expanded his role and responsibilities on the team.

38. In this role, Mr. Loeffler's compensation was measured on a Team Quota Plan ("TQP") versus an Individual Quota Plan ("IQP"). This meant that Mr. Loeffler was entitled to commissions on the team's performance, as opposed to only those accounts individually assigned to him. This placed Mr. Loeffler on a similar compensation structure to that of his manager, Tom Scott ("Mr. Scott").

39. In March 2023, the end of the first quarter, Mr. Scott suddenly reversed course, claiming that in order to 'protect' Mr. Loeffler from company downsizing, he needed to be placed back on an IQP.

40. Despite claiming this to be in Mr. Loeffler's best interest, Mr. Scott made the change retroactive, meaning Mr. Loeffler would be perceived by IBM as if he had been on an IQP within the new sales region and on new accounts as of January 2023.

41. This set Mr. Loeffler at an incredible disadvantage. He was now assigned to completely new sales regions with brand new accounts, all of which were unlikely to close within the year.

42. This change also later served as the basis for IBM to refuse to credit Mr. Loeffler with the revenue for over a year's work on Project Comet.

43. Upon his retroactive placement to an IQP, Mr. Loeffler was paired with Donna Johnson ("Ms. Johnson") (a black female) as his Seller. Contrary to standard practice, IBM did not place them within the same sales territory. In fact, Ms. Johnson

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

had been given a sales territory that would allow her to receive commissions from Project Comet, while Mr. Loeffler was not.

44.     Mr. Loeffler continued to work on Project Comet throughout 2023.

45.     On May 31, 2023, Mr. Scott presented Mr. Loeffler with recognition for the great job he was doing in his new territory.

46.     On information and belief, Ms. Johnson was placed on a PIP in approximately April or May 2023 that was objectively less difficult to achieve than Mr. Loeffler's. In addition, being credited with revenues from Project Comet made it even easier for Ms. Johnson to come off the PIP.

47.     Sometime around June 2023, IBM assigned a new manager to Mr. Loeffler's team, Mr. Castillo, effective July 2023. The announcement was made on Webex to Mr. Loeffler's entire business unit.

48.     During the June 2023 Webex call, the host, Sergio Amoni ("Mr. Amoni") said, "Look at all the black and brown faces on this call . . . [Mr. Castillo] has done a great job injecting diverse talent on this team, and if he keeps it up, he can expect a long career at IBM and lots of bonuses."

49.     Brenda Harvey ("Ms. Harvey"), a senior executive at IBM, who was also on the Webex call made statements echoing this sentiment.

50.     Mr. Amoni's and Ms. Harvey's comments suggest that Mr. Castillo's bonus and career longevity were somehow connected to hiring and retaining people based on their skin color.

51.     Shortly after the June 2023 call, IBM withheld Mr. Loeffler's commissions for Project Comet. Although he had dedicated nearly two years to the project and served as its primary technical architect, contributing hundreds of hours, IBM failed to pay him the commissions he had been promised and rightfully earned.

52.     When Mr. Loeffler brought the unpaid commissions to Mr. Castillo's attention, Mr. Castillo refused to help rectify the situation.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

53.    On June 21, 2023, Mr. Loeffler opted out of the *Mark Comin, et al. v. International Business Machines Corporation*, Case No. 3:19-cv-07261-JD (N.D. C.A. 2020) ("*Comin v. IBM*")*,* class action settlement to preserve his right to sue IBM individually for unpaid commissions.

54.    *Comin v. IBM* alleges that IBM unlawfully withheld payment of commissions to IBM employees in violation of California law.

55.    Of the approximately 2,000 class members to be offered a settlement payout from the *Comin v. IBM* lawsuit, Mr. Loeffler was the only class member to opt out of the settlement.

56.    On information and belief, IBM, through its attorneys, had knowledge of Mr. Loeffler's opt-out from the *Comin v. IBM* settlement.

57.    In September of 2023, Mr. Castillo met with Mr. Loeffler to conduct a regular performance review. Unlike previous performance assessments, this review departed significantly from his prior reviews and was inconsistent with his actual performance for IBM, particularly considering his de facto promotion only 9 months prior.

58.    Until September 2023, Mr. Loeffler had never received a negative performance review during his IBM tenure.

59.    Within days of the September 2023 performance review, Mr. Castillo placed Mr. Loeffler on a six-week performance improvement plan ("PIP").

60.    The conditions of the PIP were impossible to meet. The PIP required Mr. Loeffler to achieve 70% of his annual target incentive within weeks.

61.    Mr. Loeffler objected to the terms of the PIP, noting that the typical sales cycle for public-sector contracts was approximately 12 months—making the PIP's goals unachievable within the timeframe provided.

62.    In response to Mr. Loeffler's objection, Mr. Castillo stated, "That's right," effectively conceding that the PIP's expectations were unrealistic and designed to

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

FIRST AMENDED COMPLAINT

ensure failure.

63.    In other communications, Mr. Castillo made negative comments about Mr. Loeffler's "runway," which is a common euphemism at IBM for time until retirement—and an obvious proxy for age.

64.    If IBM had credited Mr. Loeffler appropriately for his tireless work on Project Comet, he would have exceeded 100% of his annual sales target.

65.    Mr. Castillo and IBM knew the PIP was impossible and could not be achieved—that was the point.

66.    The PIP was pretextually designed to remove Mr. Loeffler from his position because he is an older white male. IBM discriminates in favor of younger workers generally (as the EEOC explicitly found), and, in the name of "diversity," specifically discriminates against white males.[2]

67.    Consistent with IBM's overarching and discriminatory policy, IBM directed Mr. Castillo to replace Mr. Loeffler with a substantially younger, non-white individual.

68.    Upon information and belief, following Mr. Loeffler's termination, a substantial portion of his portfolio was assigned to one or both of the two non-white mentees that Mr. Loeffler had been asked to mentor beginning in 2022.

69.    Accordingly, IBM replaced Mr. Loeffler with substantially younger, non-white employees.

70.    Effectively, IBM leadership, in coordination with HR, pre-selected individuals for termination based on their age, race, and sex. First-line managers like Mr. Castillo would be directed to skew performance reviews and metrics in order to justify later placement on unachievable PIPs, and ultimately, termination.

71.    On information and belief, IBM utilizes algorithms and predictive

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

---

[2] Incidentally, IBM's racial discrimination is not limited to anti-white animus. CEO Arvind Krishna has made it clear that Asians are also a disfavored racial group at IBM, but this fact is only relevant insofar as it demonstrates the pervasiveness and granularity of racial discrimination at IBM.

analytics to pre-select individuals within various business units to be set up for termination based on their race, sex, and age.

72.     In response to the PIP, Mr. Loeffler contacted Rob McLean ("Mr. McLean"), an IBM Vice President of Technical Sales, and Mike Ryan ("Mr. Ryan"), also a Vice President of Technical Sales. Both Mr. McLean and Mr. Ryan knew of Mr. Loeffler's exceptional skill set and longstanding reputation for hard work within the company.

73.     Mr. Ryan contacted IBM's Human Resources and Legal team on Mr. Loeffler's behalf, requesting that the PIP be removed and that Mr. Loeffler keep his job.

74.     Despite Mr. Ryan's efforts, IBM would not remove Mr. Loeffler's PIP.

75.     On October 20, 2023, Mr. Ryan told Mr. Loeffler that IBM would not review or grant an exception for an older, white male. Mr. Ryan stated, "If you were an early professional hire, there might be more flexibility, if you know what I mean." Put differently, Mr. Ryan relayed having been explicitly told that Mr. Loeffler's demographics were a decisive factor in IBM's decision to terminate Mr. Loeffler.

76.     On November 30, 2023, IBM terminated Mr. Loeffler's employment.

77.     Subsequently, journalist James O'Keefe released footage of a 2021 meeting between IBM's CEO, Mr. Krishna, the Chairman of IBM's Red Hat subsidiary, Paul Cormier ("Mr. Cormier"), and other IBM executives.[3]

78.     During the question-and-answer portion of the meeting, Allison Showalter ("Ms. Showalter"), the Senior Director of Communications at Red Hat, read a question to Mr. Krishna regarding "accountability" for Diversity, Equity, and Inclusion ("DEI") goals.

79.     Ms. Showalter asked: "IBM highlights their progress in promoting and recruiting underrepresented minorities in the executive roles and holding executives

---

[3]James O'Keefe III (@JamesOKeefeIII), *X* (*formerly, Twitter*) (Oct. 28, 2024, 2:12 PM), https://x.com/JamesOKeefeIII/status/1734374423124176944?s=20.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

accountable for DEI goals. At Red Hat, executive representation is dismal and there is no accountability for DEI work. Why do you not hold [Mr. Cormier] to the same standards for diverse staffing and leadership as IBM does?"

80.    Mr. Krishna proceeded to detail specific aspects of IBM's DEI policy, and explicated specific measures and standards implemented by IBM to foster such "accountability." He explained that Mr. Cormier is held to the same standards as other IBM executives.

81.    Mr. Krishna went on, stating:

> I'm very clear about this. I expect at the executive level, so that is not just my directs, but all executives in the company, have to move forward by 1% on both underrepresented minorities. Let me say it. Asians in the U.S. are not an underrepresented minority in a tech company. However, others are. Ditto on gender diversity. So, we take underrepresented and gender. You've got to move both forward by a percentage. That leads to a plus on your bonus. By the way, if you lose, you lose part of your bonus. [Mr. Cormier]'s held to the same standards. [Mr. Cormier] and I have been working together to say, 'OK, how do apply those [standards] deeper into the organization?'

82.    Lest his references to illegal quotas be mistaken for discrimination at only the Executive level, Mr. Krishna clarified: "This is not executives." He went on to explain that he "looked at our entire recruiting," and "in all of them, we want to get to the representational demographics of the underlying populations."

83.    Mr. Krishna continued, "I am not trying to finesse this, so for blacks, we should try to get towards 13 point something percent. On Hispanics, you got to get into the mid-teens. On gender, okay, we are somewhere in the mid 30s."

84.    As Mr. Krishna clearly articulated, IBM, at Mr. Krishna's direction, implemented a system of providing financial incentives to hire individuals of desired racial groups and sex, and, following naturally, discriminating against others in

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

disfavored groups. This was implemented companywide and at every level.

85.   During the same call, Mr. Cormier corroborated this. He claimed he had fired leadership at his branch of IBM for not implementing those same DEI standards: "But we also hold the leadership at Red Hat accountable [for those standards]. I mean, I'll be very candid. Without an exception for privacy, I could name multiple leaders over the last year, plus, that were held accountable to the point they're no longer here at Red Hat because they weren't willing to live up to the [DEI standards] that we set in this space."

86.   As Mr. Cormier spoke, Mr. Krishna nodded along—termination for failure to discriminate is not Red Hat policy, but the policy for management across all of IBM.

87.   The video brought attention to the policy described in multiple corporate filings by IBM.[4] The 2020 IBM Diversity Report expressly states: "Compensation for our C-suite and all IBM executives is calculated in part based on their organization's progress in improving diversity for women and underrepresented minorities" and that "We are holding executives accountable for progress in diversity and inclusion and have tied this directly to their bonuses and compensation."[5]

88.   In another example, IBM's 2022 Annual Report states: "Our executive compensation program metrics include a diversity modifier to reinforce our focus and continued accountability for improving the diverse representation of our workforce. Globally, our executives are measured on the improvement of diversity and inclusion for women."

89.   In 2023, the year Mr. Loeffler was terminated, IBM's ESG Report stated: "To reinforce our focus on attracting and retaining diverse talent in our workforce that represents our clients and the world, we include a diversity modifier as part of our executive compensation plan." The Report also included data reflecting IBM's efforts

---

[4] See IBM Corporate statements in annual corporate filings such as ESG Impact Reports, Annual 10-K reports, Annual Reports, and Annual Proxy Statements. 2024 Proxy Statement at 36, 2023 Annual Report at 16, 2022 Annual Report at 16, 2023 10-K, 2022 10-K, 2023 ESG Impact Report, and 2022 ESG Impact Report.
[5] IBM 2020 Diversity & Inclusion Report.

FIRST AMENDED COMPLAINT

to monitor and meet the diversity goals articulated by CEO Arvind Krishna.

90. Race- and sex-based quotas are illegal in the U.S. But at IBM, they're policy.

91. This policy, alongside IBM's longstanding, well-documented history of age discrimination, provided the impetus and motivation for Mr. Castillo to design and implement a pretextual PIP, resulting in Mr. Loeffler's termination.

92. At the direction of Mr. Krishna and IBM, Mr. Castillo acted upon company policy that effectively disincentivized—and, in practice, nearly prohibited—the hiring of older white males. The same policy encouraged the termination of employees within this demographic to create opportunities for individuals whom the company classified as more "diverse."

93. Mr. Castillo, and/or his superiors, had financial motivations for terminating Mr. Loeffler.

94. Mr. Castillo, and/or his superiors, could receive their full bonus only by removing older white males and replacing them with younger "underrepresented" minorities.

95. Mr. Loeffler lost his job because he did not fit any of IBM's desired diversity categories, falling prey to IBM's perverse and illegal bonus system.

96. Mr. Loeffler's age was a problem, as Mr. Castillo's comments about his "runway" at IBM imply.

97. Mr. Loeffler's race was a problem—he could not be one of the "black or brown faces" on the screen that would ensure Mr. Castillo's professional success at IBM.

98. Mr. Loeffler's sex was a problem, holding back Mr. Castillo from achieving his boss, Mr. Krishna's, stated goal of just over 50% female representation in IBM's workforce.

99. IBM created an incentive structure that systematically disfavored older,

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

white men like Mr. Loeffler.

100.  Defendants have discriminated against Mr. Loeffler in violation of his civil rights.  As the individual responsible for directing the creation and execution of the discriminatory policy at issue, Defendant Krishna had personal involvement with and was causally connected to the resulting adverse action against Loeffler.

101.  As a direct and proximate result of IBM's unlawful conduct, Mr. Loeffler suffered damages, including but not limited to lost wages, loss of future earnings, loss of benefits, emotional distress, and other compensatory damages in an amount to be proven at trial.

102.  In doing the acts herein complained of, IBM acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at the time of trial.

103.  Mr. Loeffler exhausted his administrative remedies by filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 23, 2024. *See* **Exhibit 2**.

104.  Mr. Loeffler received a Notice of Right to Sue Letter from the EEOC, dated April 21, 2025. *See* **Exhibit 3**.

105.  Mr. Loeffler obtained a Right to Sue Letter from the California Civil Rights Department dated December 20, 2024. *See* **Exhibit 4.**

## FIRST CLAIM FOR RELIEF

### *Against All Defendants*

### (Violation of the Civil Rights Act of 1866, 42 U.S.C. §1981)

106.  Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

107.  42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of private contracts.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

108.   It protects the rights of "would-be" contractors along with those who have already made contracts.

109.   But for his race, Mr. Loeffler would have maintained his contract for full-time employment with IBM beyond the date of his termination.

110.   However, because of his race, he was removed from his position, terminating his contract. Indeed, because of his race, Mr. Loeffler was affirmatively denied employment.

111.   Mr. Loeffler attempted but was unable to maintain a contract with Defendants as a Technical Seller because of Defendants' purposeful discrimination against Mr. Loeffler on the basis of his race.

112.   Defendants knowingly and intentionally violated § 1981 by expressly excluding Mr. Loeffler from employment and other contract opportunities because of his race.

113.   Defendants' discriminatory conduct caused Mr. Loeffler to suffer substantial harm, including loss of earned commissions, wages, and benefits, emotional distress and humiliation resulting from discriminatory treatment and termination, and damage to his professional reputation.

114.   In doing the acts herein complained of, the Defendants acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at trial.

## **SECOND CLAIM FOR RELIEF**

### ***Against Defendant IBM***

**(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*)**

115.   Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

116.   IBM has implemented a policy requiring illegal quotas for race and sex in

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

the hiring of employees.

117.   IBM has created a de facto hiring policy whereby nonwhite and female applicants are preferred over white male applicants.

118.   Mr. Loeffler was more than qualified for his position.

119.   He was put on a performance improvement plan because he was a white male.

120.   Thereafter, Mr. Loeffler was terminated due to his race and sex.

121.   Further, similarly situated individuals outside of Plaintiff's race and sex were treated more favorably by IBM.

122.   Mr. Loeffler has complied with Title VII's charge filing provisions, 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).

123.   IBM's actions as described herein constitute unlawful race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

124.   As a direct and proximate result of IBM's unlawful conduct, Mr. Loeffler suffered damages, including but not limited to lost wages, loss of future earnings, loss of benefits, emotional distress, and other compensatory damages in an amount to be proven at trial.

125.   In doing the acts herein complained of, IBM acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at the time of trial.

## **THIRD CLAIM FOR RELIEF**

### *Against Defendant IBM*

**(Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634)**

126.   Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

FIRST AMENDED COMPLAINT

127.   Mr. Loeffler is a 64-year-old individual, who, at all times relevant to this Complaint, was employed by Defendants in technical sales.

128.   Mr. Loeffler was 62 years old at the time of his dismissal.

129.   Mr. Loeffler was replaced by a substantially younger individual (or individuals) who was (or were) at least 10 years younger than him.

130.   At the time of his dismissal, Mr. Loeffler was over 40 years old, and therefore a member of the protected age group as defined in the Age Discrimination in Employment Act, 29 U.S.C. § 631 (a).

131.   Mr. Loeffler was highly qualified for his job at the time IBM fired him. He had the necessary skills, experience, and qualifications for the job.

132.   His performance was more than adequate, as indicated by consistent performance reviews during his tenure.

133.   Mr. Loeffler is informed and believes he was discriminated against because of his age, culminating in his termination from IBM.

134.   As a direct and proximate result of IBM's actions, Mr. Loeffler suffered and continues to suffer substantial losses in earnings and other employment benefits, as well as substantial emotional distress.

135.   IBM acted intentionally, with reckless disregard for the law, especially in light of the EEOC's finding that it engaged in such discrimination.

136.   IBM's actions as described herein constitute unlawful age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634.

137.   As a direct and proximate result of IBM's unlawful conduct, Mr. Loeffler suffered damages, including but not limited to lost wages, loss of future earnings, loss of benefits, emotional distress, and other compensatory damages in an amount to be proven at trial.

138.   In doing the acts herein complained of, IBM acted with fraud, oppression,

and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at trial.

## **FOURTH CLAIM FOR RELIEF**

### *Against Defendant IBM*

**(California Disparate Treatment, Government Code Section 12940(a))**

139.    Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

140.    Defendant IBM intentionally discriminated against Mr. Loeffler in violation of California Government Code § 12940(a).

141.    At all relevant times, Mr. Loeffler was employed by IBM.

142.    Defendant IBM took the following adverse employment actions against Mr. Loeffler: (1) Denial of credit or commissions for work on Project Comet, despite his substantial contributions; (2) Assignment to a PIP and assignment of impossible PIP goals intended to result in his termination; (3) Termination of Mr. Loeffler's employment on or about November 30, 2023.

143.    Mr. Loeffler is informed and believes that the substantial motivating reasons for IBM's adverse actions taken against him were his race, age, and sex.

144.    Defendant IBM maintained a corporate policy that tied compensation and bonuses to the firing of older white males. This policy incentivized discriminatory hiring, promotion, and termination practices based on race, sex, and age, to the detriment of employees like Mr. Loeffler, who did not fit the favored demographics of Defendants.

145.    Defendants and their managers acted in accordance with the discriminatory policy to deny Mr. Loeffler of his employment and compensation.

146.    Defendant IBM's discriminatory conduct caused Mr. Loeffler to suffer substantial harm, including loss of earned commissions, wages, and benefits, emotional

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

distress and humiliation resulting from discriminatory treatment and termination, and damage to his professional reputation.

147.   In doing the acts herein complained of, Defendant IBM acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at trial.

## FIFTH CLAIM FOR RELIEF

### *Against Defendant IBM*

### **(California Wrongful Termination)**

148.   Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

149.   Defendant IBM intentionally discriminated against Mr. Loeffler in violation of California and federal law.

150.   At all relevant times, Mr. Loeffler was employed by IBM.

151.   Defendant IBM terminated Mr. Loeffler's employment on or about November 30, 2023.

152.   Mr. Loeffler is informed and believes that the substantial motivating reasons for Defendant IBM's adverse actions taken against him were his race, age, and sex.

153.   Defendant IBM's actions in terminating Mr. Loeffler violated the public policy of the State of California, which prohibits discrimination and retaliation based on age, race, and sex.

154.   Mr. Loeffler is informed and believes that the substantial motivating reasons for Defendant IBM's adverse actions taken against him were his race, age, and sex.

155.   Defendant IBM maintained a corporate policy that tied compensation and bonuses to the firing of older white males. This policy incentivized discriminatory

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

hiring, promotion, and termination practices based on race, sex, and age, to the detriment of employees like Mr. Loeffler, who did not fit the favored demographics of Defendant IBM.

156.    Defendant IBM and its agents acted in accordance with the discriminatory policy to deny Mr. Loeffler his employment and compensation.

157.    Defendant IBM's discriminatory conduct caused Mr. Loeffler to suffer substantial harm, including loss of earned commissions, wages, and benefits, emotional distress and humiliation resulting from discriminatory treatment and termination, and damage to his professional reputation.

158.    In doing the acts herein complained of, Defendant IBM acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at trial.

## SIXTH CLAIM FOR RELIEF

### *Against Defendant IBM*

### (California Disparate Impact, Government Code section 12940(a))

159.    Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

160.    Defendant IBM is an employer as defined under California Government Code § 12926(d).

161.    At all relevant times, Mr. Loeffler was employed by IBM.

162.    Defendant IBM maintained and implemented an employment practice and selection policy that tied executive bonuses and compensation to achieving specific DEI goals. These goals included increasing the hiring, promotion, and retention of specific demographics, but excluded older white males.

163.    Accordingly, this policy and practice had a disproportionate adverse effect on older white males, like Mr. Loeffler, who were not part of Defendant IBM's favored

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

demographic groups.

164.    Mr. Loeffler is a 64-year-old white male and thus is a member of the protected classes adversely affected by Defendant IBM's employment practices.

165.    Mr. Loeffler was denied commissions, placed on an impossible PIP pretextually designed to justify his termination, and was ultimately terminated from his employment on or about November 30, 2023.

166.    Defendant IBM's actions constitute unlawful discrimination under California Government Code § 12940(a) due to the disparate impact of its employment practices on Mr. Loeffler and other similarly situated individuals.

167.    As a direct and proximate result of Defendant IBM's unlawful conduct, Mr. Loeffler suffered damages, including but not limited to lost wages, loss of future earnings, loss of benefits, emotional distress, and other compensatory damages in an amount to be proven at trial.

168.    In doing the acts herein complained of, Defendant IBM acted with fraud, oppression, and malice and with a willful and malignant intention to do harm and injury to the plaintiff by reason of which Mr. Loeffler is entitled to punitive and exemplary damages to accord with proof adduced at trial.

## SEVENTH CLAIM FOR RELIEF

### *Against Defendant IBM*

**(Non-Payment of Wages, Violation of Labor Code Sections 201 and 202)**

169.    Mr. Loeffler incorporates by reference the foregoing factual allegations in paragraphs 1 through 105 as though fully set forth herein.

170.    As stated above, Mr. Loeffler worked for Defendant IBM beginning in 2014 and was terminated on November 30, 2023.

171.    As discussed above, IBM owes wages to Mr. Loeffler, stemming from commissions owed, in the amount of approximately $40,000, since November 30, 2023.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Had Mr. Loeffler been given credit for his work on project Comet, he would have hit his annual commissions target, entitling him to the aforementioned commissions.

172.    Defendant IBM was required to pay Plaintiff all wages owed to him within 72 hours of his last day of work under Labor Code Section 201, but these commissions were never paid.

173.    In addition, Defendant IBM failed to pay Mr. Loeffler the full amount of his entitlement to vacation pay of 15 days paid vacation. The value of unpaid wages based on unused paid vacation entitlement is at least $11,500.

174.    Accordingly, Mr. Loeffler is owed wages of $50,500, plus interest thereon.

175.    In addition, Mr. Loeffler is entitled to attorney's fees and costs for the nonpayment of wages under Labor Code Section 218.5.

### **EIGHTH CLAIM FOR RELIEF**

#### *Against Defendant IBM*

**(Waiting Time Penalties – Violation of Labor Code Section 203)**

176.    Mr. Loeffler incorporates by reference the foregoing factual allegations in paragraphs 1 through 105 as though fully set forth herein.

177.    Mr. Loeffler was employed by Defendant IBM and was fired on November 30, 2023. As alleged above, IBM failed to pay Mr. Loeffler commissions owed in the amount of $50,500 within 72 hours of his termination date. IBM did not do so. The wages are owed as of the filing of this Complaint.

178.    Pursuant to California Labor Code Section 203, where an employer willfully fails to pay wages due upon termination, the employer is subject to a penalty of the employee's daily wage for each day the wages remain unpaid, up to a maximum of 30 days.

179.    Here, the waiting time penalties owed to Mr. Loeffler are at least $30,000. This was calculated by multiplying Mr. Loeffler's daily wage rate of approximately $1,000 by 30 days.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

# NINTH CLAIM FOR RELIEF

### *Against Defendant IBM*

## (Retaliation - Violation of Labor Code Section 98.6)

180.    Mr. Loeffler incorporates paragraphs 1 through 105 of this Complaint as though set forth fully herein.

181.    At all relevant times, Mr. Loeffler was employed by IBM.

182.    Castillo was Mr. Loeffler's manager.

183.    As an employee of IBM, Mr. Loeffler was protected under the California Labor Code.

184.    Mr. Loeffler reported IBM's violation of the law to Castillo – namely, that he had not been paid his commissions to which he was entitled.

185.    This constitutes a protected activity under Section 98.6 of the California Labor Code.

186.    Further, Mr. Loeffler opted out of the *Comin v. IBM* settlement to preserve his right to pursue legal action against IBM for nonpayment of commissions earned.

187.    This constitutes a protected activity under Section 98.6 of the California Labor Code.

188.    Mr. Loeffler's engaging in these protective activities was a substantial factor behind the adverse action of his termination.

189.    Adverse action was taken on Mr. Loeffler's employment within 90 days of engaging in protected activities.

190.    Such adverse action was wrong and illegal. The above actions constitute retaliation under California law.

191.    As a result of IBM's retaliatory conduct, Mr. Loeffler suffered damages in an amount to be proven at trial, including lost wages, emotional distress, and punitive damages.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

192.    Mr. Loeffler is also entitled to recover attorney's fees from the above alleged illegal conduct pursuant to California Labor Code Section 218.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Loeffler respectfully requests that this Court enter judgment in his favor and against all Defendants jointly and severally as to all Counts alleged and grant the following relief:

A.    A declaratory judgment that the Defendants' de facto hiring policy violates 42 U.S.C. § 1981, and/or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq*., and/or California Government Code §§ 12900 *et seq*.

B.    A permanent injunction barring the Defendants from violating applicable nondiscrimination laws, including maintaining a policy of paying bonuses to management for engaging in unlawful discrimination.

C.    Actual and compensatory damages to include unpaid wages, interest thereon, and waiting time penalties under California Labor Code Section 203.

D.    Punitive damages under 42 U.S.C. § 1981, and California Government Code §§ 12900 *et seq*., in an amount to be determined at trial.

E.    Reasonable costs and expenses of this action, including attorneys' fees, and expert fee costs under 42 U.S.C. § 1988, and California Government Code § 12965, Labor Code Section 218.5, and any other applicable laws.

F.    Pre- and post-judgment interest.

G.    Such other relief as the Court deems appropriate and just.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

FIRST AMENDED COMPLAINT

DATED:  September 3, 2025

**JW HOWARD│ATTORNEYS, LTD.**
**AMERICA FIRST LEGAL FOUNDATION**

By:  */s/ John W. Howard*
     John W. Howard
     Scott J. Street
     Michelle D. Volk
     Peter C. Shelling

     Ryan T. Giannetti
     Laura Stell
     James Rogers

     Attorneys for Plaintiff
     JOHN LOEFFLER

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

## <u>JURY TRIAL DEMAND</u>

Mr. Loeffler demands a trial by jury on all claims for which it is available.

DATED:  September 3, 2025          **JW HOWARD │ ATTORNEYS, LTD.**
                                   **AMERICA FIRST LEGAL FOUNDATION**


By:  */s/ John W. Howard*
     John W. Howard
     Scott J. Street
     Michelle D. Volk
     Peter C. Shelling

     Ryan T. Giannetti
     Laura Stell
     James Rogers


     Attorneys for Plaintiff
     JOHN LOEFFLER

FIRST AMENDED COMPLAINT

# CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On September 3, 2025, I electronically filed the **FIRST AMENDED COMPLAINT** and served the documents using the Court's Electronic CM/ECF Service which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 3, 2025 at San Diego, California.

*/s/ Dayna Dang*
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

27
FIRST AMENDED COMPLAINT