John W. Howard (SBN 80200)
Scott J. Street (SBN 258962)
Peter C. Shelling (SBN 351159)
**JW HOWARD | ATTORNEYS, LTD**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel: (619) 234-2842

James Rogers* (AZ Bar No. 027287)
Rachael Griffin* (VA Bar No. 98207)
Laura Stell* (NC Bar No. 59840)
Brittany Bennett* (GA Bar No. 717377)
**AMERICA FIRST LEGAL FOUNDATION**
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (202) 964-3721

*Admitted *pro hac vice*

Attorneys for Plaintiff John Loeffler

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JOHN LOEFFLER,

Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York Corporation; and ARVIND KRISHNA, an individual,

Defendants.

Case No. 2:25-cv-05765-CBM-PD

[Assigned to the Honorable Consuela B. Marshall]

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER**

Date: November 3, 2026
Time: 10:00 a.m.
Crtrm: 8D

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

## REPLY BRIEF

This should be an easy motion to decide.[1] The Federal Rules of Civil Procedure exist "'to secure the just, speedy, and inexpensive determination of every action.'" *Tagupa v. Odo*, 843 F. Supp. 630, 633 (D. Haw. 1994) (quoting Fed. R. Civ. P. 1). But plaintiffs also deserve a fair chance to gather evidence to prove their claims. "There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

***1. The general rule.*** Rule 16 reflects that policy by giving district judges discretion to modify a scheduling order "for good cause" shown. Fed. R. Civ. P. 16(b)(4). This inquiry "focuses on the reasonable diligence of the moving party" in seeking relief. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the timetable set forth in the order." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003).

Mr. Loeffler's counsel explained in the moving papers why they satisfied that standard. ECF 65 at 10-11. IBM did not show otherwise. It contends that Loeffler "is dissatisfied with the evidence developed during the discovery period." ECF 67 at 1. Hardly. Discovery has revealed evidence that IBM was pursuing diversity, equity and inclusion ("DEI") goals in 2023, the year it terminated Loeffler's employment, and was doing so in Loeffler's very business unit (Global Sales) and in the employment band that Loeffler worked (Band 10). ECF 66 at 3.

In fact, between 2023 and 2024, IBM had an entire team of sales executives—dubbed the "Technical Leadership Team"—working to reduce its sales staff while increasing the number of diverse employees (hereinafter "TLT"). *Id.* "Diversity" did

[1] Unless noted otherwise, defined terms have the meaning given to them in the motion.

not include white people. It did not include men. And it did not include older people. It meant women, blacks, Hispanics, and Native Americans. *Id.*, Exh. A at IBM-LOEFFLER-0004243.[2]

Discovery has also revealed that senior IBM executives were tracking their diversity metrics in the Sales division in which Loeffler worked and in Band 10. ECF 66 at 6, Exh. E.

This suggests that IBM was implementing DEI metrics in Loeffler's business unit when it suddenly terminated Loeffler's employment. That is powerful circumstantial evidence from which a jury could conclude that Loeffler's race/sex were motivating factors in the decision. *See Duvall v. Novant Health, Inc.*, 95 F.4th 778, 789-90 (4th Cir. 2024) (emphasizing importance of such evidence in a case like this).

So, yes, Loeffler has already obtained evidence from which a jury could find that IBM discriminated against him based on his race, sex, and age (or a combination of the three). But, as explained in the motion (and below), we are missing evidence about several key matters, including how IBM credited revenue against Loeffler's Incentive Plan Letter ("IPL") and what, if anything, IBM did during the fall of 2023, when Loeffler complained about being put on a Performance Improvement Plan ("PIP") because he believed the numbers used to justify it were inaccurate. ECF 65 at 8-10. That information will be necessary to respond to IBM's inevitable "pretext" argument.

Thus, this motion does not call for "a new round of open-ended discovery" as IBM contends. ECF 67 at 1. It seeks a relatively short extension, consistent with the trial schedule of Loeffler's lead counsel, that will allow us to finish gathering evidence about the key issues in the case.

***2. The meet and confer process and the unprepared 30(b)(6) designee.*** To the extent IBM argues that Loeffler's counsel did not meet and confer with its counsel in

[2] IBM labeled this document "CONFIDENTIAL" but it has not filed anything to justify sealing the document. We do not believe the document qualifies for sealing under federal law, but the Court does not have to decide that issue to decide this motion.

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

good faith to avoid this motion—and worse, rejected its offer to extend the cutoff without motion practice—it is wrong.

We began conferring with IBM's counsel about the depositions that would need to be completed before the discovery cutoff on July 30. ECF 66 at 4-5. That included a 30(b)(6) deposition on topics that we did not think percipient witness depositions would be sufficient to cover, and which the documents IBM produced did not completely explain. *Id.* at 6-7; *see also* ECF 68 at 2.

Among those topics, a few stood out: (1) IBM's implementation of DEI policies/goals between 2020 and 2025, something that led IBM to pay $17.5 million to the federal government to settle a federal charge; (2) the TLT, which appeared to implement those DEI goals in Loeffler's business unit (Global Sales) between 2022 and 2024; (3) the creation, modification, and assessment of IPLs, which IBM blames for the termination of Loeffler's employment; and (4) the crediting of revenue for Loeffler's accounts in 2023, which again, IBM used to justify Loeffler's termination. ECF 68 at 2-3.

Those *are* complicated matters. And, as we explained to IBM's counsel, obtaining testimony about those matters through a 30(b)(6) deposition would be far easier and more efficient than deposing every person who was involved in them. After all, IBM is a large company and dozens of people were involved in these matters.

The 30(b)(6) deposition is the primary reason we filed this motion. It was delayed until September because IBM's counsel needed time to figure out who it would designate on the key topics. The deposition should have proceeded on September 29 in New York City, a date when Loeffler's counsel already planned to be on the east coast, but, after agreeing to that date, IBM's counsel said nobody would appear until October 13, the day before the discovery cutoff. *Id.* at 3; ECF 66 at 5.

That created the need for an extension. And while IBM's counsel offered to stipulate to a brief extension of the cutoff, to November 2, they already knew that would

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

not work because of our preparation for a trial that starts in San Diego on November 6. ECF 66 at 6.[3]

Of course, if IBM had produced one or more witnesses to testify completely about the topics in the 30(b)(6) notice on October 13, we might not be here. But it didn't do that.

*First*, IBM only agreed to produce a witness on four of the twenty-two requested topics. *Id.* Then, it chose not to prepare its designee for one of the four topics, falsely claiming that Loeffler had withdrawn it. ECF 68 at 4. Thus, for one of the four topics on which IBM agreed to produce a 30(b)(6) witness, we received no testimony on October 13.

*Second*, IBM's designee, HR executive Aparna Nair, was not prepared to testify in any depth about the three topics on which IBM did allow her to testify, one of which she "[could not] recall …." *Id.* at 3-4; *see also id.*, Exh. A at 19:23-20:15.[4]

In fact, Ms. Nair testified that all she did to prepare for the deposition was speak with IBM's lawyers and read some documents they gave her. *Id.*, Exh. A at 9:19-15:22. She did not speak with anybody at IBM besides lawyers to prepare for the deposition. *Id.* at 15:2-9, 19:18-20:15. Notably, she did not speak with anybody involved with the TLT. *Id.* at 133:5-23. That includes Jason Gartner, an executive who authored a key presentation we obtained about the TLT, and who still works at IBM, but who Ms. Nair did not speak to before the deposition. *Id.* at 136:16-137:0.

Put simply, we learned nothing from Ms. Nair about the TLT that is not in the documents IBM has produced.

Similarly, when asked about IBM's DEI efforts between 2020 and 2025, Ms. Nair

[3] We also had to file this motion at least 28 days before November 3, because that was the last hearing date before the San Diego trial, which could take two and a half weeks to complete.

[4] We cite the deposition page and line numbers as they appear in the rough transcript (not to the PDF page numbers associated with the ECF filing).

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

said that "diversity" meant "non-discrimination." *Id.* at 66:18-19; 67:3-5. Thus, according to Ms. Nair, IBM's diversity efforts between 2020 and 2025 included promoting white people and men. *Id.* at 67:6-9. She said that despite being presented with public statements in which IBM executives said the killing of George Floyd and subsequent riots in 2020 "moved us from a thought process of unconscious bias to a conscious appreciation of race." *Id.* at 37:16-38:1-5. She said that despite being presented with documents that showed no mention of white people or men among IBM's "diversity" metrics. Thus, Ms. Nair could not confirm whether these statements, which IBM will likely object to on hearsay and other grounds when we try to use them later, were accurate because she did not ask anybody. *Id.* at 38:6-39:8.

Furthermore, Ms. Nair did not know whether any IBM executives were paid more money because of their efforts to increase the percentage of underrepresented groups (i.e., not white men), even though IBM's CEO has made public statements about that compensation practice. *Id.* at 80:16-83:21.

In fact, Ms. Nair did not even know if the percentage of underrepresented groups increased at IBM after 2020. *Id.* at 84:17-86:16.

That is not proper. "Concomitant with a corporation's duty to produce a responsive witness is its duty to prepare the witness so that [he or she] may give complete, knowledgeable and binding answers on behalf of the corporation." *Andrade v. Cooper/T. Smith Stevedoring Co.*, No. CV 06-907-B-M2, 2007 WL 9702539, at *3 (M.D. La. Oct. 9, 2007) (quotations omitted). Thus, "a Rule 30(b)(6) corporate designee's lack of preparation for a deposition, whether through the reviewing of corporate records or otherwise, is deemed to be a failure to appear" which can subject the designating party to sanctions under Rule 37. *Id.* (quotations omitted); *see also QC Labs v. Green Leaf Lab, LLC*, No. 818-CV-01451-JVS-JDEX, 2019 WL 6797250, at *2 (C.D. Cal. July 19, 2019) (explaining that, to satisfy its duty, "the designee, with the corporation's assistance, must conduct a robust internal investigation of the topics

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

contained in the notice" (quotations omitted)).

Ms. Nair did not do that. All she did was speak with the lawyers representing IBM in this case. That is plainly insufficient to satisfy 30(b)(6). *See AssuredPartners of Cal. Ins. Servs. LLC v. Pahl*, No. CV-25-00693-TUC-RM, 2026 WL 765435, at *3 (D. Ariz. Mar. 18, 2026) (calling "a single conference with counsel lasting approximately one hour the day before the deposition" insufficient to prep for 30(b)(6) deposition).

IBM may argue that the 30(b)(6) notice was not specific enough for it to prepare Ms. Nair. That is wrong. The deposition notice only needs to "describe with reasonable particularity the matters for examination …." Fed. R. Civ. P. 30(b)(6). If the responding party is confused about the scope of the topics, it should notify the opposing party so they can "confer in good faith about the matters for examination." *Id.*

IBM did not do that. It led Loeffler's counsel to believe that it was conducting a diligent inquiry to find and prepare somebody to testify about the most important topics in the 30(b)(6) notice. Then it showed up for the deposition, took an unreasonably narrow view of the topics, and presented a witness who had done nothing but talk to IBM's litigation counsel to prepare—and who, not surprisingly, could not answer many of counsel's questions. In fact, Ms. Nair responded "I don't know" *twenty-one times* during the deposition.

This conduct is especially improper given that, as it acknowledged, IBM has known about the 30(b)(6) topics since early July. ECF 67 at 12. IBM had three months. Its failure to diligently identify a designee and to adequately prepare that person for the 30(b)(6) deposition is the primary cause of this request to extend the discovery cutoff. IBM should not be rewarded for that behavior.

***3. There is no reason to deny relief.*** IBM emphasizes the prejudice it would allegedly suffer from giving Loeffler's counsel an additional two and a half months to complete discovery. The Court can consider that, of course, but "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party" seeking relief. *In re W.*

*States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013).

This case is not like the extreme cases in which courts have denied a request to modify the scheduling order to complete discovery. For example, in *Cardew v. New York State Department of Corrections and Community Supervision*, 743 F. Supp. 3d 523, 528 (W.D.N.Y. 2024), the court denied a request for such relief after granting eight scheduling orders across more than two years of litigation. Similarly, in *Powell v. County of Solano*, No. 2-19-CV-2459-JAM-DPB, 2022 WL 484837, at *2 (E.D. Cal. Feb. 16, 2022), the court noted that the plaintiff had been aware of the need to conduct the specific discovery "for well over a year" and generally acted without diligence throughout that time.

By contrast, in *Cut-Heal Animal Care Products, Inc. v. Agri-Sales Associates*, Inc., No. CIV A 3:07-CV-1816-D, 2009 WL 305994, at *2-3 (N.D. Tex. Feb. 9, 2009) ("*Cut-Heal*"), the court granted a continuance where any delays were due to ongoing settlement talks and shifts in litigation strategy.

That is the case here. Discovery ramped up over the summer. ECF 66 at 4. We did not know that IBM would produce more than 10,000 pages of documents in this case. We did not expect to be doing multiple 30(b)(6) depositions in New York City. We did not plan to be flying around the country to depose multiple percipient witnesses, some of whom no longer work for IBM.

IBM *did* know that. Thus, it will not be prejudiced by granting this relief. And any prejudice could be cured by continuing the trial date and pre-trial deadlines by a few months, as the court did in *Cut-Heal*. 2009 WL 305994, at *3.

Denying relief will severely prejudice Loeffler, though. He is entitled to testimony from an IBM witness who is adequately prepared on the topics in the 30(b)(6) notice. Or, if IBM does not want to put a person through that effort, it can identify the people who in fact oversaw the matters identified in the 30(b)(6) notice. But that may require deposing senior people like IBM CEO Arvind Krishna and Senior Sales VP Rob

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

Thomas.

Whatever the case, IBM should not be allowed to have it both ways. We served IBM with the 30(b)(6) notice to avoid the inevitable dispute over those "apex" depositions. The Court should grant Loeffler the time his counsel needs to ensure IBM complies with its obligations regarding the deposition.

***4. The discovery that remains.*** If necessary, we will explain exactly what discovery we wish to do between now and the end of the year. That depends on how IBM responds, though. The remaining discovery could all be done through a 30(b)(6) deposition at which one or more witnesses are prepared to testify. Or IBM can figure out who oversaw and made decisions about the requested topics and produce those people (including its CEO). But burying its head in the sand and doing nothing to help finish this discovery is not sufficient.

Therefore, the Court should grant the motion and continue the discovery cutoff through the end of 2026. Respectfully submitted,

DATED: October 20, 2026

**JW HOWARD | ATTORNEYS, LTD.**
**AMERICA FIRST LEGAL FOUNDATION**

By: */s/ Scott J. Street, Peter C. Shelling*
Scott J. Street
Peter C. Shelling

Attorneys for
Plaintiff JOHN
LOEFFLER

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On October 20, 2026, I electronically filed the **REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER** and served the documents using the Court's Electronic CM/ECF Service, which will send electronic notification of such filing to all registered counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 20, 2026, in San Diego, California.

*/s/ Peter Shelling*
Peter Shelling
pshelling@jwhowardattorneys.com